UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,



02 CV 0778 (SJ)

- against -

**MEMORANDUM &
ORDER**

RICHARD JAMES and RONALD MALLAY,

       Defendants.
-----------------------------------------------------------X
A P P E A R A N C E S:

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney, E.D.N.Y.
One Pierrepont Plaza, 15th Floor
Brooklyn, New York 11201
By: Robert Capers, Esq.
   James McGovern, Esq.
   Lawrence Ferazani, Esq.
Attorneys for the United States

EPHRAIM SAVITT, ESQ.
260 Madison Avenue, Suite 2200
New York, NY 10016
Attorney for Defendant Richard James

STEVE ZISSOU & ASSOCIATES
42-40 Bell Blvd., Suite 302
Bayside, NY 11361
By: Steve Zissou, Esq.
Attorney for Defendant Richard James

1

KAPLAN & KATZBERG
767 Third Ave, 26th Floor
New York, NY 10017
By: Kenneth J. Kaplan, Esq.
Attorney for Defendant Ronald Mallay

LAW OFFICES OF RICHARD JASPER
276 Fifth Avenue, Suite 501
New York, NY 10001
By: Richard Jasper, Esq.
Attorney for Defendant Ronald Mallay

JOHNSON, Senior District Judge:

Defendants Ronald Mallay ("Mallay") and Richard James ("James") (collectively "Defendants") challenge the constitutionality of the Federal Death Penalty Act ("FDPA") and move to dismiss the government's notice of aggravating factors. For the reasons set forth below, Defendants' motion is DENIED in all respects.

I. **The Superceding Indictment**

On September 9, 2004, a grand jury sitting in the Eastern District of New York returned a nineteen count indictment against Defendants. The indictment charged Defendants with participation in the "Mallay Enterprise," a criminal enterprise that existed for the purpose of, among others things, committing murder for pecuniary gain. In sum, Defendants were charged with murder, murder-for-hire, solicitation of murder, conspiracy to murder, racketeering, obstruction of justice, mail fraud, and money laundering.

Included in this indictment was a "Notice of Special Findings" that listed five

statutory aggravating factors under 18 U.S.C. § 3592 (c)(6), 18 U.S.C. § 3592 (c)(7), 18 U.S.C. § 3592 (c)(8), 18 U.S.C. § 3592 (c)(9), and 18 U.S.C. § 3592 (c)(11), and one non-statutory aggravating factor under 18 U.S.C. § 3593(a). The current indictment also alleges specific states of mind and factual circumstances that mirror provisions of 18 U.S.C. § 3591(a)(2)(A), 18 U.S.C. § 3591(a)(2)(B), and 18 U.S.C. § 3591(a)(2)(C).

## II.   Constitutional Avoidance

A criminal defendant has the burden of proving that a federal statute is unconstitutional. See, e.g., Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 198 (2001). A defendant challenging the constitutionality of a federal statute "must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Further, any court considering the constitutionality of a federal statute has a duty to construe statutes to avoid "constitutional infirmity." Salinas v. United States, 522 U.S. 52, 59-60 (1997). It is well-settled that if one interpretation yields serious constitutional questions while another is reasonable and ameliorates constitutional problems, courts must side with the argument that avoids such problems. See Hooper v. California, 155 U.S. 648, 657 (1895).

## III.   Ring does not render the FDPA unconstitutional

Defendants contend that the FDPA demonstrates that Congress intended the aggravating factors to be considered only in the sentencing phase of a capital case rather

3

P-049

than as elements of the crime of capital murder. Because there is no provision in the FDPA for presenting aggravating factors to a grand jury, Defendants maintain that by submitting the aggravating factors to the grand jury in this case, the government has essentially created a new crime. Defendants argue that the government's attempt to comport the FDPA with the requirements set forth in Ring v. Arizona, 536 U.S. 584 (2002), is unconstitutional because only Congress has the authority to amend the FDPA and any attempt by the executive or the judiciary to amend the statute constitutes a usurpation of Congress' power.

### A. Ring does not create a new substantive crime or a new substantive elements of an existing crime.

Defendants argue that Congress intended the mental culpability and statutory aggravating factors that make a defendant eligible for the death penalty to be sentencing factors rather than elements of the capital crime itself. Further, Defendants contend that Ring compels the conclusion that mental culpability and statutory aggravating factors are now elements of a new, as yet undefined, capital crime. Consequently, Defendants claim that because Congress has not yet enacted a capital crime which specifically enumerates the mental culpability and statutory aggravating factors as elements, the government may not submit these factors to a grand jury as though they were elements.

Ring recognized that certain factors act as "the functional equivalent of an element of a greater offense" if they have the effect of enhancing the penalty which a criminal defendant faces. Ring, 536 U.S. at 605. But Ring did not go so far as to

4

require that the statutory aggravating factors actually be labeled as "elements." Defendants have read far more into Ring than that decision allows. That decision was limited to the proposition that the Fifth and Sixth Amendments are procedural safeguards for "the formality of notice, the identity of the factfinder, and the burden of proof." Jones, 526 U.S. at 243 n. 6.

Indeed, Ring, like Apprendi v. New Jersey, 530 U.S. 466 (2000), and Jones v. United States, 526 U.S. 227 (1999), before it, dealt with procedural guarantees of due process rather than substantive guarantees. See Schriro v. Summerlin, 542 U.S. 348 (2004); see also Cannon v. Mullin, 297 F.3d 989, 994 (10th Cir. 2002) ("Apprendi announced a rule of criminal procedure foreclos[ing] [...] argument that Ring announced a substantive rule"); United States v. Sanchez-Cervantes, 282 F.3d 664, 668 (9th Cir. 2002) (finding that Apprendi was a rule of procedure, not substantive law). Because Ring and its predecessors were concerned with procedural rather than substantive considerations, there is no requirement that the "functional equivalent" of an element become an actual element of a new substantive offense. As a result, there is no new substantive crime and the government's submission of the statutory aggravating factors and the culpable mental states does not constitute an unconstitutional usurpation of Congress' authority to enact substantive law.

**B.     The "Notice of Special Findings" in the indictment is not an unconstitutional attempt to "fix" the FDPA.**

However, even though Ring, Harris, and Apprendi were procedural in nature,

5

they compel the conclusion that the procedural safeguards that exist when determining a criminal defendant's guilt or non-guilt also extend back to the grand jury stage. A crime is not properly alleged "unless the indictment and the jury verdict include all the facts to which the legislature attached the maximum punishment." Harris, 536 U.S. at 563-564. As the government points out, the effect of Ring and Harris seems to be that the culpability and the statutory aggravating factors that provide the basis for the imposition of the death penalty must appear in the indictment, as they do in the Superceding Indictment in this case. See United States v. Quinones, 313 F.3d 49, 53 n.1 (2d. Cir. 2002) (noting that Ring requires that statutory aggravating factors must be "alleged in the indictment and found by a jury in capital cases"); see also United States v. Allen, 406 F.3d 940, 943 (8th Cir. 2005); United States v. Robinson, 367 F.3d 278, 284 (5th Cir. 2004); United States v. Higgs, 353 F.3d 281, 299 (4th Cir. 2003).

Defendants point out that the FDPA does not provide any mechanism by which aggravating factors and other essential elements may be pled by indictment. Defendants argue that this presents a fatal flaw in the FDPA and that the only way to reconcile the FDPA and subsequent Supreme Court cases would be for the Court and the government to effectively "rewrite" the FDPA to include such a mechanism.

Defendants fail to show how any federal statute is being "rewritten" here. No rewriting of the FDPA is required because the special notices found in the indictment satisfy the Defendants' rights under the Indictment Clause without violating the plain

6

language of the FDPA. See United States v. Williams, 2004 WL 2980027, at *11 (S.D.N.Y. Dec. 22, 2004) ("[N]othing in the FDPA must be 'rewritten' to comply with Ring and Jones. There is simply no language in the FDPA that even mentions grand jury findings, let alone prohibits them with respect to facts constituting aggravating circumstances"). Indeed, the government can, as it has here, easily comply with its constitutional and statutory obligations by first submitting a case to the grand jury and then filing notice of its intention to seek the death penalty. See United States v. Le, 327 F. Supp. 2d 601, 610 (E.D.Va 2004).

Despite Defendants' arguments to the contrary, there is nothing that prevents a grand jury from making special findings as to statutory aggravating factors. The grand jury historically has had broad authority to conduct investigations and report criminal conduct. See United States v. Williams, 504 U.S. 36, 48 (1992). Nothing in the FDPA or any other federal law prevents the grand jury from considering certain factual circumstances and other factors which are the functional equivalent of elements of a capital crime. The Court notes that numerous other courts have considered the issue of the FDPA's silence on the role of the grand jury and each has found that a grand jury has the authority to make special findings as to culpable mental states and statutory aggravating factors. See, e.g., United States v. Robinson, 367 F.3d 278 (5th Cir. 2004); United States v. Lentz, 225 F.Supp.2d 672, 680-681 (E.D.Va. 2002); United States v. Church, 218 F.Supp.2d 813, 814-15 (W.D.Va. 2002). Accordingly, the process

7

P-049

employed by the government in this case has the dual effect of protecting Defendant's due process rights and leaving the FDPA in tact. There is nothing improper or unconstitutional about this and Defendants' arguments to the contrary are without merit.

### IV. The FDPA's evidentiary standard during the sentencing phase does not violate Defendants' due process rights.

Defendants further contend that the FDPA is unconstitutional because the FDPA permits the admission of evidence at the penalty phase of a capital trial that would not be admissible under the Federal Rules of Evidence ("FRE"). See 18 U.S.C. § 3593(c). Defendants, relying on Ring, contend that the relaxed evidentiary standard at the penalty phase is inconsistent with the fact that the subject of the sentencing phase is the "functional equivalent" of an element of the offense. The Second Circuit has already considered and rejected this argument in United States v. Fell, 360 F.3d 135 (2d. Cir.2004). In Fell, the Court found that the FRE are not constitutionally mandated. Fell, 360 F.3d at 137-138. Indeed, the FRE are not the only means by which a defendant's rights are ensured because the Court acts as a gatekeeper of constitutionally permissible evidence. Id. Congress has the authority to set forth rules of evidence in federal trials subject only to the requirement that the rules comport with the Constitution. Id.

A "heightened reliability" is essential to the process of imposing a death sentence which requires that the sentencing body be presented with as full and complete an understanding of the case as possible. Id. at 143; see also Woodson v. North

8

Carolina, 428 U.S. 280, 305 (1976). The FDPA's evidentiary standard comports with this reasoning by excluding only evidence whose probative value is outweighed by the danger of unfair prejudice to the defendant. Id. at 144. The FDPA allows evidence to be presented to the jury that the FRE would exclude. By encouraging to introduction of all relevant information about the individual on trial, the FDPA promotes this "heightened reliability." Id. Therefore, the evidentiary standard at the penalty phase under the FDPA does not violate Defendants' due process rights.

V. **The FDPA does not violate Defendants' Fifth or Eighth Amendment rights.**

Defendants argue that the imposition of the death penalty in this case is a violation of their Fifth and Eighth Amendments right. Defendants contend that the death penalty is applied in an arbitrary and unprincipled manner because there is no intelligible difference between the cases in which the death penalty is sought and those in which it is not. Moreover, Defendants contend that the infrequency with which the death penalty is sought violates Furman v. Georgia, 408 U.S. 238 (1972). Defendants also contend that the FDPA is unconstitutional because the death penalty is imposed on the invidious basis of race and the irrational basis of geography.

A. **Infrequency and Arbitrariness of Application of FDPA**

It is not for this Court to consider whether the government's decisions to seek the death penalty are consistent. Rather, this Court can only judge the constitutionality of the statute that allows for the death penalty. The mere fact that the death penalty is

9

rarely sought even more rarely imposed does not by itself render the FDPA unconstitutional. United States v. Sampson, 275 F. Supp. 2d 49, 88 (D.Mass.2003); United States v. O'Driscoll, 203 F. Supp. 2d 334 (M.D.Pa.2002). Constitutional questions arise only when the risk of arbitrariness becomes "sufficiently substantial." Furman, 408 U.S. at 295 (Brennan, J., concurring). One way in which to guard against such a risk is to draft a statute that "ensures that the sentencing authority is given adequate information and guidance." Id. at 195.

A capital sentencing scheme must genuinely narrow the group of defendants eligible for the death penalty. See Arave v. Creech, 507 U.S. 463 (1993); Zant v. Stephens, 462 U.S. 862 (1983); Furman, 408 U.S. at 313. So long as a statutory aggravating factor allows a jury to distinguish between defendants that "deserve" capital punishment and those that do not, the aggravating factor will not be found to be constitutionally infirm. Id. Further, the use of "aggravating factors" is a principled basis for proscribing when the death penalty is an available punishment and when it is not. See Bell v. Cone, 543 U.S. 447 (2005).

It is clear from a reading of the FDPA that the FDPA provides a principled basis for seeking the death penalty. The statutory aggravating factors in the FDPA reserve the death penalty for the most heinous crimes committed for the most cynical reasons against the most vulnerable victims. To the extent that there is a tension between a system which provides adequate guidance to the sentencing authority as well as the

10

discretion to opt for a life sentence, the Supreme Court has determined that this tension is not unconstitutional. See, e.g., Callins v. Collins, 510 U.S. 1141, 1141-42 (1994). Therefore, the Court declines to hold that the FDPA is unconstitutional on these grounds.

### B. Racial and Geographic disparities

Defendants next argue that there exists racial discrimination and geographic arbitrariness in the administering of the death penalty that violates their rights under the Fifth and Eighth Amendments. This argument is without merit. To prove an equal protection claim, defendants must establish that the government acts in a discriminatory fashion and that application of the FDPA to Defendants is a result of discrimination. See McClesky v. Kemp, 481 U.S. 279, 291-98 (1987). Defendants have shown neither here. Defendants have failed to show that similarly situated individuals of different races have been treated differently. Further, Defendants have failed to show that similarly situated criminal defendants in other jurisdictions have not been charged with capital crimes. Absent such a showing, it is impossible for this Court to conclude that Defendants are discriminated against because they belong to a certain race, national origin, or geographic region.

P-049

## VI. Conclusion

For the reasons set forth above, Defendants' challenges to the constitutionality of the FDPA are rejected and Defendants' motion is DENIED in all respects.

SO ORDERED.

/s/(SJ)

Dated: March 23, 2007
Brooklyn, New York

Senior U.S.D.J.

P-049